## CALVIN AMADON, APPELLANT, *v.* HERMAN V. INGERSOLL, RESPONDENT.

*Evidence — opinion of a witness, when it is admissible — the grounds of an objection to its competency must be specifically stated.*

APPEAL by the plaintiff from an order of the Cattaraugus Special Term denying a motion for a new trial made upon a case and exceptions.

The plaintiff sustained an injury by the falling of a highway bridge in the town of Leon, county of Cattaraugus, which he alleged was occasioned by the negligence of the defendant, who was commissioner of highways of the town. The defendant had a verdict at the circuit.

The defendant was a commissioner of highways of the town at the time of the accident. On 15th May, 1879, the plaintiff drove a team of four horses, drawing a wagon loaded with a steam boiler, weighing 6,000 pounds, on to the bridge in question, and some of the stringers supporting it gave way and the bridge fell, and the wagon and boiler went down with it. The plaintiff received some personal injury and the owner of the team, wagon and boiler was damaged somewhat in his property. The latter assigned his claim to the plaintiff, who included it with his own, for such personal injury, in the causes of action alleged in the complaint.

The bridge had been erected several years before. It was a single span of about forty feet in length, supported by six stringers resting on abutments at each end, and extending across the stream, and plank were laid on and crosswise the stringers, making a bridge twelve feet wide; and, as an additional support, braces were erected on the two outer stringers, supported in and extending from near ends of them respectively, and coming together in the line of and a few feet above them. The evidence on the part of the plaintiff tended to prove that in September, 1878, the bridge had become weakened by reason of the braces getting loose and rotten, so that it would spring under heavy loads; that the defendant was then notified that the bridge was out of repair, and needed repair to render it safe for passage with teams; that the defendant then examined its condition, took up the plank, examined the

stringers, concluded not to put in new stringers, and expressed the opinion that the old ones would last a while longer, but the defendant did put in new braces in the manner before described, which came together on each side of and at the middle of the bridge, over the outer stringers respectively and at an elevation of three feet, and through and from each junction of the braces he put and supported an iron rod, extending through the stringers beneath, and to the rod was attached, and supported by it, a needle beam, extending crosswise and beneath and in support of the stringers, giving additional strength and firmness to the bridge.

The plaintiff also gave evidence tending to prove that some of the stringers were then impaired by a dry rot. On the part of the defendant evidence was given by him, and those with him, when the bridge was examined and repaired (as before mentioned), tending to prove that the stringers were examined and tested by cutting and boring into them; that while they were not entirely sound they were not rotten; that they were apparently sound; that some of them on top where the plank rested, for an inch in depth, were "a little dozy, powder posted, powder rot or dry rot," but beyond that sound, and when struck into with an axe would split up.

The plaintiff added evidence tending to prove that when the bridge broke down the stringers were decayed by a dry rot, except a little in the center that was sound; that they were beech timber, and the expense of putting in new ones would have been twelve dollars.

The defendant's counsel asked one witness who was present in September, 1878, and assisted the defendant in making the examination and reparation of the bridge, the question, "Did you, from your examination of the bridge stringers, consider them sufficient?" And another witness also then there, and in like manner assisting, the question, "Did you consider the stringers at that time suitable and sound for that purpose?" And to the defendant he put the question, "Did you consider these stringers sound and suitable for that bridge?"

The plaintiff's counsel objected to those questions respectively, without stating any ground of the objection.

The objections were overruled by the court and exceptions severally taken, and the witnesses answered all of them in the affirmative.

The court at General Term said : " It must be assumed that the witnesses were qualified to give their opinions if such evidence was competent. (*Cushman* v. *U. S. Life Ins. Co.*, 70 N. Y., 73; *Stevens* v. *Brennan*, 79 id., 255.) The rule which excludes opinions of skilled persons is confined to matters of which the jury, on a statement of facts relating to the subject, are so advised as to be equally as competent as any witness to declare a conclusion. It is, therefore, where no skill peculiar to any class of persons is required in the determination of a matter of fact involved in a controversy that the testimony of witnesses is confined to a relation of facts, and is not permitted to announce any conclusion or opinion.

" The line between opinions permissible and not so, is not an arbitrary one, limited to any class of cases, but is based on the principle which distinguishes between questions that are and are not common to the understanding of all persons of ordinary intelligence or which may or may not become so by information of the facts upon which any particular conclusion of fact must be founded. (*Clark* v. *Bruce*, 12 Hun, 274.)

" In this instance there was a bridge, of which timber stringers of certain size forty feet in length constituted a part, in the condition they were, supported by the braces, needle-beam and iron bolt or rod in the manner before mentioned. The plan of construction was involved in the consideration of the strength of the structure and its several parts, and in reference to the whole the question was one of judgment whether the bridge was suitable and sufficient for the purpose designed, or whether the stringers themselves in the structure were so. This would seem to require some calculation and the judgment of skilled persons; those whose knowledge was peculiar to that sort of erections made to bear weight. These six stringers occupied parallel lines, separated equal distances in a width of twelve feet, and the sufficiency of them depended upon their united power of resistance under the various circumstances to which the pressure of weight, by use of the bridge, might be applied.

" The opinions of the witnesses in respect to the stringers, it will be assumed, had reference to them in their relation to, and connection with, the structure and its plan as a whole, and in view of their purpose in it. And it seems difficult to distinguish this testi-

mony from that of skilled persons who, having inspected a work of this nature in its several parts, should be called upon to express their conclusion of its character and adaptability to the purpose of its construction. And, therefore, it seems to come within the rule which permits opinions of experts. (*Moore* v. *Westervelt*, 9 Bosw., 558; affirmed 27 N. Y., 234, 241; *Meiners* v. *Steinway*, 12 J. & S., 369; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y., 42; *Conhocton Stone R.* v. *B., N. Y. and E. R. R. Co.*, 3 Hun, 523; *Spickerman* v. *Clark*, 9 id., 133; *Clark* v. *Bruce*, 12 id., 274; *Ferguson* v. *Hubbell*, 26 id., 250; *Curtis* v. *Gano*, 26 N. Y., 426; *Conrad* v. *Ithaca*, 16 id., 173; *Baird* v. *Daly*, 68 id., 547; *Transportation Line* v. *Hope*, 95 U. S. [5 Otto], 297–298; *Ward* v. *Kilpatrick*, 85 N. Y., 413.)

"In *Hover* v. *Barkhoof* (44 N. Y., 113), the belief of one of the defendants that they had made use of all the means necessary to the safety of the bridge was excluded. That testimony offered, evidently was not treated as the judgment of an expert of the actual condition, strength or capacity of the structure, or any of its parts, but as his belief, merely, that the defendants had not neglected their duty and had relation to the purpose of the defendants. The question was negligence or no negligence, and his belief had no competent bearing on that fact. There was no question of good or bad faith involved in the case.

"In the case at bar the evidence having been received, questions put to the witnesses are entitled to the most favorable interpretation the language will fairly allow, in support of a legitimate purpose. It is difficult to see how the question of competency can be raised upon the exceptions taken to the admission of the testimony. The rule is general and very well settled that to support an exception to the reception of testimony a tenable ground of the objection must be specified in its support. (*Walker* v. *Erie Ry. Co.*, 63 Barb., 261; *Merritt* v. *Briggs*, 57 N. Y., 651, 652; *Adams* v. *People*, 63 id., 621; *Fountain* v. *Pettee*, 38 id., 184, 186; *In re Crosby* v. *Day*, 81 id., 242; *Ward* v. *Kilpatrick*, 85 id., 414, 417; *Daly* v. *Byrne*, 77 id., 182.)

"The fact whether the stringers were suitable and sufficient for the purposes of the bridge was a material one, and the testimony offered and received must be deemed to be the opinion of the wit-

nesses in that respect, which brings it within the rule requiring the point of incompetency of opinion to be specified to render an exception to the reception of evidence on that ground available on review. (See cases last above cited.)

"In *Ward* v. *Kilpatrick* (85 N. Y., 417), an incompetent opinion of a witness was received against a general objection and exception. And the court, in holding that the exception was not available, say that if the objection had specified the ground 'the difficulty might have been obviated. The form of the question could have been changed, or the party may have acquiesced in the incorrectness of the evidence and withdrawn the question entirely.'

"The reason and propriety of the rule are obviously to avoid surprise and for the fair administration of justice, and the exception to it embraces those cases only where the objection cannot be obviated and the evidence offered is not in any aspect competent or material." (*Merritt* v. *Seaman*, 6 N. Y., 168, 171 ; *Porter* v. *Parks*, 2 Hun, 654; *Quinby* v. *Strauss*, 90 N. Y., 664.)

*Henderson & Wentworth*, for the appellant.

*Allen & Thrasher*, for the respondent.

Opinion by BRADLEY, J.; SMITH, P. J., and BARKER, J., concurred ; HAIGHT, J., not sitting.

Order affirmed.